# ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeal of -- )
)
Public Warehousing Company, K.S.C. ) ASBCA No. 59020
)
Under Contract Nos. SP0300-03-D-3061 )
SPM300-05-D-3119 )
SPM300-05-D-3128 )

APPEARANCES FOR THE APPELLANT: Michael R. Charness, Esq.
Jamie F. Tabb, Esq.
  Vinson & Elkins LLP
  Washington, DC

APPEARANCES FOR THE GOVERNMENT: Daniel K. Poling, Esq.
  DLA Chief Trial Attorney
John F. Basiak, Jr., Esq.
Nathaniel A. Work, Esq.
Keith J. Feigenbaum, Esq.
  Trial Attorneys
  DLA Troop Support
  Philadelphia, PA

## OPINION BY ADMINISTRATIVE JUDGE THRASHER
## ON THE GOVERNMENT'S PARTIAL MOTION TO DISMISS FOR LACK OF
## SUBJECT MATTER JURISDICTION AND MOTION FOR SUMMARY JUDGMENT

This appeal arises from the three captioned Prime Vendor contracts between appellant, Public Warehousing Company, K.S.C. (PWC), and the Defense Supply Center Philadelphia (DSCP), since renamed DLA Troop Support, a component of the Defense Logistics Agency (DLA). PWC appeals from the denial of its 5 December 2011 certified claim, as revised by its 26 February 2013 letter, seeking $4,605,594.53 in interest penalties allegedly due pursuant to the Prompt Payment Act, as amended, 31 U.S.C. §§ 3901-3907, and the terms of the captioned contracts. Our jurisdiction to entertain this appeal derives from the Contract Disputes Act of 1978 (CDA), 41 U.S.C. §§ 7101-7109.

The government originally moved to dismiss this appeal, in part, for lack of jurisdiction, alleging that portions of appellant's claim were barred by the CDA's six-year statute of limitations, 41 U.S.C. § 7103(a)(4)(A). Following full briefing on the government's partial motion to dismiss, the United States Court of Appeals for the Federal Circuit issued its decision in *Sikorsky Aircraft Corp. v. United States*, 773 F.3d 1315 (Fed. Cir. 2014). By order dated 15 December 2014, the Board requested supplemental briefing regarding the impact of *Sikorsky* on the government's motion.

In response to the Board's 15 December 2014 order, the government filed a document titled, "DLA's Motion for Summary Judgment and Supplemental Brief in Support of DLA's Partial Motion to Dismiss." In this submission, the government "renews its Partial Motion to Dismiss for Lack of Subject Matter Jurisdiction and also moves for Summary Judgment on the grounds that...PWC's untimely requests for [Prompt Payment Act] interest are barred" (gov't mot. at 2).[1] In addition, the government seeks summary judgment on the basis that the exception for payments related to military contingency operations in the Office of Management and Budget's (OMB's) regulations implementing the Prompt Payment Act, 5 C.F.R. § 1315.1(b)(2), precludes PWC from succeeding on its claim (gov't mot. at 2, 13-16).

In *Sikorsky*, as the government acknowledges, the Federal Circuit held that the six-year statute of limitations in the CDA is not a jurisdictional bar. 773 F.3d at 1320-22. The court's decision in *Sikorsky* is binding on this Board. *Kellogg Brown & Root Services, Inc.*, ASBCA No. 58175, 15-1 BCA ¶ 35,988 at 175,825; *Combat Support Assocs.*, ASBCA Nos. 58945, 58946, 15-1 BCA ¶ 35,923 at 175,591, *vacating on recon.* 14-1 BCA ¶ 35,782. Because the CDA's six-year statute of limitations "provides no basis to dismiss an appeal for lack of jurisdiction," *Combat Support*, 15-1 BCA ¶ 35,923 at 175,591, the government's partial motion to dismiss for lack of subject matter jurisdiction is denied. Accordingly, we address only the government's motion for summary judgment below.

---

[1] The government acknowledges that the Federal Circuit held in *Sikorsky* that the CDA's six-year statute of limitations is not jurisdictional (gov't mot. at 16-17). However, the government argues that, with respect to the statute of limitations issue, dismissal for failure to state a claim upon which relief can be granted is appropriate (*id.* at 18-20). Although the government casts its statute of limitations argument in terms of dismissal for failure to state a claim, the government does not cite to the allegations in PWC's complaint, but rather speaks of an absence of a dispute of material fact (*id.* at 19-20). In its response, PWC treats the government's submission as seeking summary judgment on the statute of limitations issue (*see* app. resp. to gov't mot. at 58-59). The government does not contradict this characterization in its reply. We therefore treat the government's submission as seeking partial summary judgment based upon the CDA's six-year statute of limitations. *Cf. Dick Pacific/GHEMM, JV*, ASBCA No. 55829, 08-2 BCA ¶ 33,937 at 167,941 (noting that where the parties present matters outside the pleadings that are not excluded by the Board, a motion to dismiss for failure to state a claim is typically treated as a motion for summary judgment).

## STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

### The Prompt Payment Act and Its Implementing Regulations

1. Congress enacted the Prompt Payment Act, Pub. L. No. 97-177, 96 Stat. 85 (1982), to "provide incentives for the Federal Government to pay its bills on time" and to "relieve private vendors of the unfair burdens which they frequently must bear as a result of doing business with the Government." H.R. Rep. No. 97-461, at 1, 11 (1982), *reprinted in* 1982 U.S.C.C.A.N. 111, 121. To accomplish these goals, if a federal agency failed to make a payment by the required payment date, the Prompt Payment Act required the agency to pay an interest penalty in accordance with regulations prescribed by the Director of the Office of Management and Budget (OMB). Pub. L. No. 97-177, § 2(a)(1), 96 Stat. 85.

2. OMB implemented the Prompt Payment Act by issuing OMB Circular A-125. Issuance of Circular A-125, "Prompt Payment," 47 Fed. Reg. 37,321 (Aug. 25, 1982). OMB revised Circular A-125 in 1984, 1985, and 1987. Issuance of Attachment to OMB Circular A-125, Prompt Payment, 49 Fed. Reg. 28,140 (July 10, 1984); Issuance of Attachment 2 and Other Revisions to OMB Circular A-125, "Prompt Payment," 50 Fed. Reg. 14,688 (Apr. 12, 1985); Revision to Circular No. A-125, "Prompt Payment," 52 Fed. Reg. 21,926 (June 9, 1987). In February 1988, the Federal Acquisition Regulation (FAR) was amended to implement the Prompt Payment Act and OMB Circular A-125 by adding FAR Subpart 32.9 and a Prompt Payment clause at FAR 52.232-25. Federal Acquisition Regulation; Ratification of Unauthorized Commitments and Prompt Payment, 53 Fed. Reg. 3,688 (Feb. 8, 1988).

3. Concerned that full compliance with the Prompt Payment Act had not been achieved and that problems remained, H.R. Rep. No. 100-784, at 9, 12-13 (1988), *reprinted in* 1988 U.S.C.C.A.N. 3036, 3037, 3040-41, Congress enacted the Prompt Payment Act Amendments of 1988, Pub. L. No. 100-496, 102 Stat. 2455. As amended by the 1988 amendments, the Prompt Payment Act provides that, in accordance with regulations prescribed by OMB, "the head of an agency acquiring property or service from a business concern, who does not pay the concern for each complete delivered item of property or service by the required payment date, shall pay an interest penalty to the concern on the amount of the payment due." 31 U.S.C. § 3902(a). The interest penalty "shall be paid for the period beginning on the day after the required payment date and ending on the date on which payment is made" and "such penalty shall be paid without regard to whether the business concern has requested payment of such penalty." *Id.* § 3902(b), (c)(1). The Act requires the head of the agency to pay the interest penalty "out of funds made available to carry out the program for which the penalty is incurred." *Id.* § 3902(f).

4. The Prompt Payment Act, as amended by the 1988 amendments, directs the Director of OMB to prescribe regulations to implement section 3902 and provides

3

detailed instructions regarding the content of the regulations. 31 U.S.C. § 3903. The Act requires the OMB regulations to generally provide a required payment date of 30 days after receipt of a proper invoice if no other payment date is established by contract, but also requires the regulations to prescribe earlier payment dates for payments related to certain food and agricultural products. *Id.* § 3903(a)(1)-(4). The Act also requires that the OMB regulations "permit an agency to make payment up to 7 days prior to the required payment date, or earlier as determined by the agency to be necessary on a case-by-case basis." *Id.* § 3903(a)(8). Lastly, the Prompt Payment Act Amendments of 1988 require the modification of the FAR to provide appropriate solicitation provisions and contract clauses to implement the Prompt Payment Act and OMB's regulations. Pub. L. No. 100-496, § 11, 102 Stat. 2455, 2463-65 (codified at 31 U.S.C. § 3903 note).

5. In 1989, OMB revised Circular A-125 to implement the 1988 amendments to the Prompt Payment Act. Revision to Circular No. A-125, "Prompt Payment," 54 Fed. Reg. 52,700 (Dec. 21, 1989). The revised Circular A-125 prescribed policies and procedures to be used by agencies to comply with the Prompt Payment Act as amended. The revised Circular A-125 prescribed rules for determining whether a proper invoice has been submitted and determining the payment due date, directing agencies to make payment no more than 7 days prior to the payment due date unless it determines that earlier payment is necessary on a case-by-case basis, and providing guidance for calculating interest due on late payments. *See id.* at 52,706-13. As relevant here, the revised Circular A-125 did not include an exception for payments related to military contingency operations.

6. In 1998, OMB issued a proposed rule that would make numerous revisions to OMB's prompt payment rules and replace OMB Circular A-125 with codified regulations. Prompt Payment, 63 Fed. Reg. 33,000 (June 17, 1998). OMB proposed to add "one additional exception to the Prompt Payment Act requirements...for payments related to certain specified emergencies and military operations." *Id.* at 33,001. OMB also proposed to add a section that would provide for "early payment for...payments related to emergencies and disasters, as well as for military deployments." *Id.*

7. In September 1999, OMB promulgated the final rule codifying its revised prompt payment regulations in Part 1315 of Title 5 of the Code of Federal Regulations. Prompt Payment, 64 Fed. Reg. 52,580 (Sept. 29, 1999). As revised, OMB's prompt payment regulations provide that "[a]ll Executive branch vendor payments and payments to those defined as contractors or vendors...are subject to the Prompt Payment Act with the following exceptions: ...(2) Payments related to...military contingency operations (as defined in 10 U.S.C. 101(a)(13))." 5 C.F.R. § 1315.1(b)(2).[2] OMB's regulations also provide:

---

[2] Section 1315.1(b)(2) also excepts payments related to emergencies and the release or threatened release of hazardous substances from the Prompt Payment Act.

4

> An agency shall make payments no more than seven days prior to the payment due date, but as close to the due date as possible unless the agency head or his designee has determined, on a case-by-case basis for specific payments, that an earlier payment is necessary.... An agency may use the "accelerated payment methods" in § 1315.5 when it determines that such earlier payment is necessary.

5 C.F.R. § 1315.4(j). Section 1315.5, titled "Accelerated payment methods," in turn provides at paragraph (c) that "payments made under a military contingency (as defined in 10 U.S.C. 101(a)(13)) may be made as soon as the contract, proper invoice, receipt and acceptance documents or any other agreement are matched. Vendors shall be entitled to interest penalties if invoice payments are made after the payment due date." C.F.R. § 1315.5(c).

8. In October 1999, Congress amended section 3903 of the Prompt Payment Act to provide:

> (c) A contract for the procurement of subsistence items that is entered into under the prime vendor program of the Defense Logistics Agency may specify for the purposes of section 3902 of this title a single required payment date that is to be applicable to an invoice for subsistence items furnished under the contract when more than one payment due date would otherwise be applicable to the invoice under the regulations prescribed under paragraphs (2), (3), and (4) of subsection (a) or under any other provisions of law. The required payment date specified in the contract shall be consistent with prevailing industry practices for the subsistence items, but may not be more than 10 days after the date of receipt of the invoice or the certified date of receipt of the items. The Director of the Office of Management and Budget shall provide in the regulations under subsection (a) that when a required payment date is so specified for an invoice, no other payment due date applies to the invoice.

National Defense Authorization Act for Fiscal Year 2000, Pub. L. No. 106-65, § 1009(2), 113 Stat. 512, 738-39 (1999).

9. On 22 May 2008, the Inspector General (IG) of the United States Department of Defense (DoD) issued Report No. D-2008-098 titled, "Internal Controls Over Payments Made in Iraq, Kuwait and Egypt" (app. resp. to gov't mot., ex. K). In this report, the DoD IG noted an apparent conflict between 5 C.F.R. §§ 1315.1 and 1315.5, and recommended that the "Under Secretary of Defense for Acquisition, Technology, and Logistics update the [FAR] and the Defense Federal Acquisition Regulation Supplement

[DFARS] to provide guidance that addresses [OMB's] exception to the Prompt Payment Act for payments related to military contingency operations" (*id.* at 22-25).

10. On 19 August 2009, the Director of Defense Procurement and Acquisition Policy issued a class deviation from FAR Subpart 32.9, which implements the Prompt Payment Act and OMB's regulations, for all DoD "contracting activities supporting payments covered by" 5 C.F.R. § 1315.1(b)(2) (app. resp. to gov't mot., ex. L). The class deviation applied when such payments "are either certified for payment in an operational area, or are contingent upon the receipt of necessary supporting documentation...emanating from an operational area" (*id.* at 1). The class deviation granted the head of the contracting activity the authority to incorporate a special payment clause into contracts when he determined that an unstable business environment exists, and directed the head of the contracting activity to "make subsequent determinations as the operational area evolves into a more stable business environment to enable the provisions of the Prompt Payment Act to apply" (*id.* at 1-2).

11. In July 2010, citing the 22 May 2008 DoD IG report, the DoD issued an interim rule amending the DFARS to "bring DoD into compliance with OMB implementation of the Prompt Payment Act by exempting military contingencies" at 5 C.F.R. § 1315.1(b)(2). Defense Federal Acquisition Regulation Supplement; Payments in Support of Emergencies and Contingency Operations (DFARS Case 2009-D020), 75 Fed. Reg. 40,712, 40,712 (July 13, 2010). The interim rule added DFARS 232.901, which provides that FAR Subpart 32.9, Prompt Payment, does not apply when (i) there is, as relevant here, a contingency operation, (ii) the head of the contracting activity has made a determination that conditions exists that limit normal business operations, and (iii) payments will be made in the operational area or made contingent upon receiving supporting documentation from the operational area. 75 Fed. Reg. 40,713; DFARS 232.901(1). The interim rule also added a new DFARS clause, DFARS 252.232-7011, PAYMENTS IN SUPPORT OF EMERGENCIES AND CONTINGENCY OPERATIONS (JUL 2010), which would apply in such situations and does not provide for the payment of interest penalties for late payments. 75 Fed. Reg. 40,714. Pursuant to DFARS 232.901, however, if the head of the contracting activity subsequently determines that "the operational area evolves into a more stable environment," the contracting officer is required to modify contracts being performed in the operational area to "deactivate[] clause 252.232-7011 and activate[] the applicable FAR Prompt Payment clause in the contract." DFARS 232.901(3)(i). In March 2011, DoD adopted the interim rule as final, with one minor, clarifying change. Defense Federal Acquisition Regulation Supplement; Payments in Support of Emergencies and Contingency Operations (DFARS Case 2009-D020). 76 Fed. Reg. 11,371 (Mar. 2, 2011). As will be seen DFARS 232.901 and the clause at DFARS 252.232-7011 were issued after award of the contracts at issue here.

6

The Prime Vendor Contracts and Military Operations in Iraq

12. On 10 May 2002, DSCP issued Solicitation No. SP0300-02-R-4003 (the 4003 solicitation) to establish indefinite-delivery/indefinite-quantity (IDIQ) contracts for the distribution of food and non-food products in three geographic zones under the Prime Vendor Program (R4, tab 14 at 1, 7). For Zone III – Middle East, DSCP anticipated making two awards, one for Kuwait and Qatar and one for Saudi Arabia (*id.* at 7). In addition to the required delivery locations (*id.* at 59), the 4003 solicitation advised that "the Prime Vendor must have the ability to support an unknown number of troops deployed in its respective operational deployment areas," which for Zone III included Iraq, upon 30 days notice (*id.* at 62-63).

13. The 4003 solicitation included FAR 52.212-4, CONTRACT TERMS AND CONDITIONS – COMMERCIAL ITEMS (FEB 2002) (R4, tab 14 at 84-87). Paragraph (i) of that clause provided:

> Payment shall be made for items accepted by the Government that have been delivered to the delivery destinations set forth in this contract. The Government will make payment in accordance with the Prompt Payment Act (31 U.S.C. 3903) and OMB prompt payment regulations at 5 CFR part 1315. In connection with any discount offered for early payment, time shall be computed from the date of the invoice. For the purpose of computing the discount earned, payment shall be considered to have been made on the date which appears on the payment check or the specified date if an electronic funds transfer payment is made.

(*Id.* at 86) The 4003 solicitation also contained the following regarding payment:

> B. Payments of delivery orders will be made in accordance with the terms and conditions of Paragraph (i) of Clause **52.212-4 "*Contract Terms and Conditions – Commercial Items*"**, appearing in the section of this solicitation entitled **"*Contract Clauses*"**.

> C. Payment is currently being made in approximately 7 days <u>after the receipt of a proper invoice</u>; however, it is still subject to the terms and conditions of the Prompt Payment Act (31 U.S.C. 3903).

(*Id.* at 67)

7

14. DSCP issued Amendment No. 0002 to the 4003 solicitation on 15 July 2002 (R4, tab 16). Section II of the amendment consisted of answers to offeror questions, which were provided "for clarification purposes only" and did "not change the solicitation language" (*id.* at 136). Among the questions and answers provided was the following:

**Question # 94:**

The solicitation states that payments are currently being made in 7 days after the receipt of a proper invoice (page 67). The solicitation states that these payments are subject to the Prompt Payment Act (31 U.S.C. 3903). However, the solicitation additionally notes that Fast Payment Procedures[3] apply versus the Prompt Payment Act (page 87). Please clarify the payment procedures that will apply under the contract.

Answer: The solicitation does not note that Fast Payment procedures apply. The Fast Pay block on page #87 is not checked, and does not apply. Prime Vendor contracts are paid via the Prompt Payment Act, meaning 7 day payment terms.

(*Id.* at 156)

15. In October 2002, Congress passed the Authorization for Use of Military Force Against Iraq Resolution of 2002, Pub. L. No. 107-243, 116 Stat. 1498. Section 3(a) authorized the President to "use the Armed Forces of the United States as he determines to be necessary and appropriate in order to— (1) defend the national security of the United States against the continuing threat posed by Iraq; and (2) enforce all relevant United Nations Security Council resolutions regarding Iraq." 116 Stat. 1501. On 19 March 2003, the President directed the United States Armed Forces to commence combat operations against Iraq. Letter to Congressional Leaders Reporting on the Commencement of Military Operations Against Iraq, 39 WEEKLY COMP. PRES. DOC. 348, 348 (Mar. 21, 2003).

---

[3] Section 1315.6 of OMB's prompt payment regulations, titled "Payment without evidence that supplies have been received (fast payment)," allows payment to be made in limited situations absent evidence of receipt of supplies. 5 C.F.R. § 1315.6; *see also* FAR Subpart 13.4; FAR 52.213-1.

16. DSCP awarded Contract No. SP0300-03-D-3061[4] (the PV1 contract), covering Kuwait and Qatar, to PWC on 28 May 2003 (R4, tab 20). The PV1 contract expressly incorporated the 4003 solicitation and all five amendments thereto (*id.* at 2). The PV1 contract also stated the following regarding payment:

> B. Payments of delivery orders will be made in accordance with the terms and conditions of Paragraph (i) of Clause **52.212-4 "*Contract Terms and Conditions – Commercial Items*"**, appearing in the section of this solicitation [sic] entitled **"*Contract Clauses*"**.

> C. Payment is currently being made in approximately 7 days after the receipt of a proper invoice; however, it is still subject to the terms and conditions of the Prompt Payment Act (31 U.S.C. 3903).

(*Id.* at 15-16)

17. On or about 30 June 2003, the parties executed bilateral Modification No. P00001 to the PV1 contract (R4, tab 21). The modification added the "Iraq Deployment Zone" to the PV1 contract and "establishe[d] separate ordering and delivery requirements for Operation Iraqi Freedom (OIF) initiatives in the country of Iraq area of operations" (*id.* at 2).

18. On or about 9 July 2003, the parties executed bilateral Modification No. P00002 to the PV1 contract, which "establishe[d] the mutually agreed upon pricing structure for 1) the Iraq Deployment Zone..., and 2) distribution costs to deliver Government Furnished Material (GFM) of various food types" (R4, tab 22). Neither Modification No. P00001 nor Modification No. P00002 exempted payments related to military contingency operations from the PV1 contract's payment terms.

19. On 20 August 2004, the parties executed bilateral Modification No. P00025 to the PV1 contract, which added the clause at FAR 52.213-1, FAST PAYMENT PROCEDURE (FEB 1998), to the contract (R4, tab 27). According to the modification, the Fast Payment Procedure clause was added pursuant to a 12 July 2004 FAR Deviation which authorized the use of "Fast Payment procedures for OCONUS Subsistence Awards in Support of Contingency Operations" (*id.* at 1). Under the terms of the modification,

---

[4] On 4 November 2004, the contracting officer issued unilateral Modification No. P00030, changing the contract number of the PV1 contract from SP0300-03-D-3061 to SPM300-04-D-3061 (R4, tab 28). The contracting officer issued unilateral Modification No. P00033 on 1 December 2004, correcting Modification No. P00030 and changing the contract number of the PV1 contract to SPM300-05-D-3061 (Bd. corr., joint filing dtd. 22 July 2015).

9

fast payment procedures were applicable to invoices "for a delivery into the Iraq deployment zone that does not exceed $500,000.00," and did not apply to invoices for deliveries to Kuwait and Qatar (*id.* at 3).

20. DSCP issued Solicitation No. SPM300-04-R-0323 (the 0323 solicitation) on 3 September 2004 (R4, tab 36). The 0323 solicitation sought to establish IDIQ contracts for the distribution of food and non-food products for five Middle Eastern geographic zones under the Prime Vendor Program. Zone 1 encompassed Kuwait, Iraq, and Jordan. The 0323 solicitation advised offerors that "[a]ll zones to be supported under this solicitation have been designated as contingency operations" as defined in FAR 2.101. (*Id.* at 10)

21. The 0323 solicitation included FAR 52.212-4, CONTRACT TERMS AND CONDITIONS – COMMERCIAL ITEMS (OCT 2003) (R4, tab 36 at 250-55). Paragraph (i)(2) of that clause stated that the "Government will make payment in accordance with the Prompt Payment Act (31 U.S.C. 3903) and prompt payment regulations at 5 CFR 1315" (*id.* at 252). The 0323 solicitation also contained the following regarding payment:

> B. Payments of delivery orders will be made in accordance with the terms and conditions of Paragraph (i) of Clause 52.212-4 "Contract Terms and Conditions – Commercial Items", appearing in the section of this solicitation entitled "Contract Clauses".
>
> C. Payment is currently being made in approximately 7 days after the receipt of a proper invoice; however, it is still subject to the terms and conditions of the Prompt Payment Act (31 U.S.C. 3903).

(*Id.* at 79)

22. On or about 17 February 2005, the parties entered into Contract No. SPM300-05-D-3119 (the PV Bridge contract), with a term from 16 February 2005 until 15 December 2005, by executing Modification No. P00036 to the PV1 contract (R4, tab 30). The PV Bridge contract incorporated the terms and conditions of the PV1 contract (*id.*).

23. Pursuant to the 0323 solicitation, DSCP awarded Contract No. SPM300-05-D-3128 (the PV2 contract) for Zone 1 (Iraq, Kuwait, and Jordan) to PWC on 7 July 2005 (R4, tab 41). The PV2 contract expressly incorporated the 0323 solicitation (*id.* at 2).

24. By letter dated 28 November 2011, PWC submitted a certified claim seeking $5,381,777.62 in late payment interest penalties allegedly due pursuant to the Prompt Payment Act and the terms of the PV1, PV Bridge, and PV2 contracts (R4, tab 1). PWC

10

attached to its claim two spreadsheets, totaling over 400 pages, detailing the interest penalties alleged due (app. supp. R4, tab 49). Although dated 28 November 2011, the parties do not dispute that PWC submitted its claim on 5 December 2011 (gov't mot. at 9, ¶ 21; app. resp. to gov't mot. at 17, ¶ 21).

25. By letter dated 26 February 2013, following multiple communications between the parties, PWC revised its claim downward to $4,605,594.53 (R4, tab 7 at 1-4).

26. The contracting officer issued a 1 November 2013 final decision denying PWC's claim in its entirety (R4, tab 13). PWC appealed the denial of its claim to this Board by letter dated 19 November 2013.

## DECISION

Having already denied the government's partial motion to dismiss on jurisdictional grounds, we are left with two pending arguments. First, the government argues that it is entitled to summary judgment because 5 C.F.R. § 1315.1(b)(2) precludes PWC from recovering Prompt Payment Act interest. Second, the government argues that it is entitled to partial summary judgment as to a portion of PWC's claim that it contends is barred pursuant to 41 U.S.C. § 7103(a)(4)(A) as untimely submitted.

Summary judgment is properly granted where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed. Cir. 1987). The government, as the moving party, bears the burden of proving the absence of a genuine issue of material fact and all significant doubt over factual issues is resolved in appellant's favor. *Colorado River Materials, Inc. d/b/a/ NAC Constr.*, ASBCA No. 57751, 13 BCA ¶ 35,233 at 172,991. The Board's task is not to weigh evidence and resolve factual issues, but to determine whether triable issues of fact exist. *U.S. Coating Specialties & Supplies, LLC*, ASBCA No. 58245, 15-1 BCA ¶ 35,957 at 175,707.

The Military Contingency Operation Exception

The parties' primary dispute concerns the proper interpretation of 5 C.F.R. § 1315.1(b)(2).[5] Section 1315.1(b)(2) provides, as relevant here, that "[a]ll Executive

---

[5] PWC states that the Prompt Payment Act "itself has never included an exception for payments related to military contingency operations," that "it is uncertain what authority OMB relied upon in creating the exception," and that "there is no indication in the regulatory history of the source or rationale for OMB's military contingency exception" (app. resp. to gov't mot. at 50; app. surreply to gov't reply to app. resp. to gov't mot. at 10). PWC does not, however, argue that 5 C.F.R. § 1315.1(b)(2) is not entitled to deference under *Chevron, U.S.A., Inc. v. Natural Resource Defense Council, Inc.*, 467 U.S. 837 (1984), and its progeny.

branch vendor payments and payments to those defined as contractors or vendors...are subject to the Prompt Payment Act with the following exceptions: ...(2) Payments related to...military contingency operations (as defined in 10 U.S.C. 101 (a)(13))." The government interprets 5 C.F.R. § 1315.1(b)(2) as prohibiting the application of the Prompt Payment Act to payments related to military contingency operations (*see* gov't reply to app. resp. to gov't mot. at 4). Relying on the 22 May 2008 DoD IG report (SOF ¶ 9), PWC contends that the government's interpretation creates a conflict between 5 C.F.R. §§ 1315.1(b)(2) and 1315.5(c) (app. resp. to gov't mot. at 51-52). Under PWC's interpretation, although the Prompt Payment Act may not apply of its own force to payments related to military contingency operations pursuant to 5 C.F.R. § 1315.1(b)(2), section 1315.1(b)(2) does not deprive an agency of the discretion to nonetheless contractually agree to make such payments in accordance with the terms of the Prompt Payment Act (*id.* at 46-47, 50). PWC maintains that DSCP exercised such discretion with respect to the three Prime Vendor contracts at issue by incorporating contract clauses stating that payment would be made in accordance with the Prompt Payment Act and its implementing regulations (*id.* at 42-45).

We construe a regulation using the same interpretive rules used in construing a statute. *Lengerich v. Dep't of Interior*, 454 F.3d 1367, 1370 (Fed. Cir. 2006); *Tesoro Hawaii Corp. v. United States*, 405 F.3d 1339, 1346 (Fed. Cir. 2005). We must read the disputed provision "in the context of the entire regulation as well as other related regulatory sections." *Vazquez-Claudio v. Shinseki*, 713 F.3d 112, 115 (Fed. Cir. 2013); *see also Mass. Mut. Life Ins. Co. v. United States*, 782 F.3d 1354, 1365 (Fed. Cir. 2015) (noting that in construing a regulation a tribunal considers "the text of the regulation as a whole, reconciling the section in question with sections related to it"). A regulation, like a statute, should be construed so that "no clause, sentence, or word shall be superfluous, void, or insignificant." *Raytheon Co.*, ASBCA No. 54907, 11-2 BCA ¶ 34,870 at 171,519 (quoting *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001)) (internal quotation marks omitted); *see also Princess Cruises, Inc. v. United States*, 201 F.3d 1352, 1362 (Fed. Cir. 2000) ("It is a long-held tenet of statutory interpretation that one section of a law should not be interpreted so as to render another section meaningless.").

The government's interpretation of 5 C.F.R. § 1315.1(b)(2) as prohibiting the application of the Prompt Payment Act to payments related to military contingency operations is perhaps a permissible reading of section 1315.1(b)(2) itself. However, we agree with PWC that the government's interpretation runs headlong into 5 C.F.R. § 1315.5(c). Section 1315.5(c), which allows accelerated payment methods for payments made under a military contingency, states that vendors "shall be entitled to interest penalties if invoice payments are made after the payment due date." Section 1315.5(c), promulgated simultaneously with section 1315.1(b)(2) (SOF ¶¶ 6-7), thus anticipates some application of the terms of the Prompt Payment Act to payments related to military contingency operations. In promulgating 5 C.F.R. § 1315.5(c), OMB noted that the accelerated payment methods provided in that section, to be used when an agency determines that early payment in necessary in accordance with 5 C.F.R. § 1315.4(j),

implement § 3903(a)(8) of the Prompt Payment Act. Prompt Payment, 64 Fed. Reg. 52,580, 52,582-83 (Sept. 29, 1999). Therefore, if we interpret 5 C.F.R. § 1315.1(b)(2) as prohibiting any application of the Prompt Payment Act to payments related to military contingency operations, then § 1315.5(c) of the regulations would have no effect. We are hard-pressed to conclude that OMB would promulgate a regulation that would be meaningless upon promulgation.

Moreover, the government's interpretation of 5 C.F.R. § 1315.1(b)(2) calls into question the validity of DFARS 232.901.[6] DFARS 232.901 was promulgated to implement the exception for payments related to military contingencies in 5 C.F.R. § 1315.1(b)(2) (SOF ¶ 11). DFARS 232.901(1) provides that FAR Subpart 32.9, which was promulgated to implement the Prompt Payment Act and OMB's prompt payment rules (SOF ¶ 2), does not apply to military contingencies if two additional criteria are met. If those criteria cease to exist, DFARS 232.901(3) calls for the application of the standard FAR prompt payment clauses. DFARS 232.901 does not preclude application of the Prompt Payment Act to payments related to military contingencies operations in all circumstances. Interpreting 5 C.F.R. § 1315.1(b)(2) as prohibiting any application of the Prompt Payment Act to payments related to military contingency operations thus creates a conflict between that section and DFARS 232.901. PWC's construction, which avoids this conflict and allows for a more concordant regulatory scheme, is therefore the better interpretation of 5 C.F.R. § 1315.1(b)(2). *See Kearfott Guidance & Navigation Corp. v. Rumsfeld*, 320 F.3d 1369, 1377 (Fed. Cir. 2003) (noting the canon of construction that there is a presumption in favor of finding harmony between two regulations dealing with similar subjects); *Rice v. Martin Marietta Corp.*, 13 F.3d 1563, 1568 (Fed. Cir. 1993) (same). Accordingly, we hold that 5 C.F.R. § 1315.1(b)(2) does not preclude an agency from contractually agreeing to make payments related to military contingency operations pursuant to the terms of the Prompt Payment Act.

All three contracts at issue in this appeal included clauses stating that payment would be made in accordance with the terms of the Prompt Payment Act. The PV1 contract expressly stated that payment was "subject to the terms and conditions of the Prompt Payment Act" (SOF ¶ 16). The PV1 contract also incorporated the 4003 solicitation, which included FAR 52.212-4, CONTRACT TERMS AND CONDITIONS – COMMERCIAL ITEMS (FEB 2002). That clause similarly provided that the government would make payment in accordance with the Prompt Payment Act and OMB's prompt payment regulations. (SOF ¶¶ 13, 16) In modifying the PV1 contract to include

---

[6] We agree with the government that DFARS 232.901 and the accompanying clause at DFARS 252.232-7011 do not apply to the contracts in dispute because the regulations were issued after contract award. *See Tech. for Commc'ns Int'l*, ASBCA Nos. 36265, 36841, 93-3 BCA ¶ 26,139 at 129,947 (applying the prompt payment regulations in effect at the time of contract award). However, PWC does not argue that these DFARS provisions are applicable to its contracts; PWC simply cites these provisions to support its interpretation of 5 C.F.R. § 1315.1(b)(2).

deliveries to locations in Iraq, the parties did not exempt payments related to military contingency operations from these payment provisions (SOF ¶ 18). The PV Bridge contract incorporated the terms and conditions of the PV1 contract (SOF ¶ 22). The PV2 contract incorporated the 0323 solicitation. Although that solicitation advised that all zones were designated as contingency operations, it included FAR 52.212-4, CONTRACT TERMS AND CONDITIONS – COMMERCIAL ITEMS (OCT 2003), which stated that payments would be made in accordance with the Prompt Payment Act and OMB's prompt payment regulations. (SOF ¶¶ 20-21, 23) Because the government contractually agreed to make payments under all three contracts in accordance with the terms and conditions of the Prompt Payment Act without exception, 5 C.F.R. § 1315.1(b)(2) does not bar any portion of PWC's claim.

Statute of Limitations

The CDA requires that "each claim by a contractor against the Federal Government relating to a contract...shall be submitted within 6 years after the accrual of the claim." 41 U.S.C. § 7103(a)(4)(A). A claim accrues "when all events, that fix the alleged liability of either the Government or the contractor and permit assertion of the claim, were known or should have been known." FAR 33.201. A party's failure to submit a claim within six years of accrual is an affirmative defense to the claim. *Kellogg Brown & Root Servs., Inc.*, ASBCA No. 58175, 15-1 BCA ¶ 35,988 at 175,825; *see also Do-Well Mach. Shop, Inc. v. United States*, 870 F.2d 637, 639 (Fed. Cir. 1989) ("The reason that the time bar was fatal is that it constituted a valid affirmative defense."). As the proponent of its affirmative defense, the government bears the burden of proving that PWC's claim was untimely. *Kellogg Brown & Root*, 15-1 BCA ¶ 35,988 at 175,825; *Lockheed Martin Corp.*, ASBCA No. 57525, 12-1 BCA ¶ 35,017 at 172,065; *see also Brunswick Bank & Trust Co. v. United States*, 707 F.2d 1355, 1360 (Fed. Cir. 1983) (party raising an affirmative defense normally bears the burden of proof).

The parties do not dispute that PWC submitted its claim on 5 December 2011 (SOF ¶ 24). To be untimely, PWC's claim must have accrued prior to 5 December 2005. The government seeks partial summary judgment, arguing that a portion of PWC's claim accrued more than six years prior to submittal. Specifically, the government argues that the events that fix liability for late payment interest penalties occur, and a claim for the interest penalties accrues, once the government fails to make timely payment on an invoice, that is the day after the payment due date. The government thus argues that PWC's claim with respect to an unspecified number of invoices, those where the government's alleged failure to make timely payment occurred prior to 5 December 2005, is barred by the CDA's six-year statute of limitations. (Gov't mot. at 19-20) We deny the government summary judgment for two reasons.

First, the government conflates two separate obligations—the obligation to make timely payment on an invoice and the obligation to pay an interest penalty for late payments. For claim accrual purposes, in determining when the alleged liability is fixed,

14

we begin by examining the legal basis of the claim. *Gray Personnel, Inc.*, ASBCA No. 54652, 06-2 BCA ¶ 33,378 at 165,475. The Prompt Payment Act, the provisions of which we have found to be applicable to the three contracts at issue, imposes an obligation on a government agency to pay an interest penalty when it fails to make a payment by the required payment date. 31 U.S.C. § 3902(a). That interest penalty is calculated for the period from the day after the required payment date to the date of actual payment, and is to be paid without regard to whether such an interest penalty was requested. 31 U.S.C. § 3902(b)-(c)(1). The Prompt Payment Act provides that a "claim for an interest penalty *not paid*" may be filed under the CDA. 31 U.S.C. § 3907(a) (emphasis added). Reading these sections together, we conclude that the government has an obligation to pay the interest penalty for late payments automatically and that the government breaches this obligation by failing to pay the interest penalty upon paying the underlying invoice, thus creating a claim for the interest penalty not paid. Our conclusion is bolstered by 31 U.S.C. § 3902(c)(3) which provides for an additional interest penalty if the government fails to pay the interest penalty due within 10 days of the underlying payment and the contractor makes a written demand for the interest penalty due within 40 days of such payment. Moreover, our conclusion is consistent with the Prompt Payment Act's legislative history. The House Report accompanying the Prompt Payment Act states that if "a Federal agency owes an interest penalty…, and then fails to pay that interest penalty, the business concern to which the penalty is owed may file a claim for the amount of interest due under the Contract Disputes Act of 1978." H.R. Rep. No. 97-461, at 15 (1982), *reprinted in* 1982 U.S.C.C.A.N. 111, 125. Accordingly, the events that fix the government's alleged liability and allow a claim for interest penalties to be asserted do not occur until the government pays the underlying invoice without paying the interest penalty due.

Second, the government has failed to establish the absence of a material dispute of genuine fact with regard to the statute of limitations question. Because interest penalties are tied to specific payments, claim accrual must be determined on an invoice-by-invoice basis. In its motion, however, the government does not present specific facts regarding the invoices for which it seeks summary judgment. Rather the government argues in general terms. The government fails to establish the facts regarding the date of the specific invoices for which it seeks summary judgment, the amount of such invoices, or the date such invoices were paid, precluding an assessment of when the government's alleged liability with regard to any particular invoice was fixed. Moreover, the government fails to introduce any facts regarding the potential applicability of 31 U.S.C. § 3903(a)(2)-(4) (earlier payment dates for certain food and agricultural products) (SOF ¶ 4) or § 3903(c), which applies specifically to DLA's Prime Vendor Program (SOF ¶ 8). The failure to introduce invoice-specific facts also precludes application of the "should have known test" for claim accrual, which includes a reasonableness component that turns upon what facts were reasonably known to the claimant. *See The Ryan Co.*, ASBCA No. 58137, 15-1 BCA ¶ 35,998 at 175,862 (citing *Laguna Constr. Co.*, ASBCA No. 58569, 14-1 BCA ¶ 35,618 at 174,459). Accordingly, summary judgment on the government's affirmative defense that the CDA's six-year statute of limitations bars a portion of PWC's claim is inappropriate.

15

## CONCLUSION

The government's partial motion to dismiss for lack of subject matter jurisdiction and the government's motion for summary judgment are denied.

Dated: 2 May 2016

JOHN J. THRASHER
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

MARK N. STEMPLER
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 59020, Appeal of Public Warehousing Company, K.S.C., rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals

16